# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

## Airman First Class AKIO A. BISCHOFF
## United States Air Force

## ACM 37731 (f rev)

## 19 February 2015

Sentence adjudged 6 June 2014 by GCM convened at Beale Air Force Base, California. Military Judge: Vance H. Spath (original court-martial) and Todd McDowell (sentence rehearing)

Approved Sentence: Bad-conduct discharge, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

Appellate Counsel for the Appellant: Colonel Eric N. Eklund; Lieutenant Colonel Gail E. Crawford; Major Anthony D. Ortiz; Major Matthew T. King; Captain Luke D. Wilson; Captain Johnathan D. Legg; and Dwight H. Sullivan, Esquire.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel Linell A. Letendre; Lieutenant Colonel C. Taylor Smith; Major Daniel J. Breen; Major Scott C. Jansen; Major Naomi N. Porterfield; Major John M. Simms; Captain Richard J. Schrider; and Gerald R. Bruce, Esquire.

Before

MITCHELL, WEBER, CONTOVEROS
Appellate Military Judges

OPINION OF THE COURT
UPON FURTHER REVIEW

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under Air Force Rule of Practice and Procedure 18.4.

MITCHELL, Senior Judge:

At a general court-martial composed of officer members, the appellant pled guilty to the wrongful use, distribution, and introduction of 3, 4-Methylenedioxy-methamphetamine ("Ecstasy"), in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. On 17 June 2010, the original panel sentenced the appellant to a bad-conduct discharge, confinement for 1 year, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the sentence as adjudged.

This court previously affirmed the findings in an unpublished decision on 8 May 2013. Because we found that the military judge committed plain error by violating Rule for Courts-Martial (R.C.M.) 912(g)(1), we set aside the sentence and returned the record of trial to The Judge Advocate General for remand to the convening authority. *United States v. Bischoff*, ACM 37731 (A.F. Ct. Crim. App. 8 May 2013) (unpub. op.). Upon our own motion, we then reconsidered the previous decision and reached the same conclusions. *United States v. Bischoff*, ACM 37731 (recon) (A.F. Ct. Crim. App. 12 July 2013) (unpub. op.).[1] On 12 August 2013, the Government asked this court to reconsider our previous decision, and we granted the motion on 11 September 2013. After reviewing the entire record, to include the supplemental submissions of counsel for both sides, we reached the same legal conclusions, upholding the findings, setting aside the sentence, and authorizing a rehearing on the sentence. *United States v. Bischoff*, ACM 37731 (recon) (A.F. Ct. Crim. App. 6 December 2013) (unpub. op.).[2] The convening authority then referred the case to a sentence rehearing. A panel of officer members sentenced the appellant to a bad-conduct discharge, forfeiture of all pay and allowances, reduction to E-1, and a reprimand. The convening authority approved the adjudged sentence.

On appeal of the rehearing, the appellant contends that (1) the military judge abused his discretion by not granting a defense challenge for cause against a court member who stated he would use his previous experience in a court-martial to determine a baseline for a fair sentence; and (2) his right to speedy appellate review was violated when the initial appellate decision breached established standards, and he suffered prejudice by having completed the original sentence to confinement when no confinement was adjudged at the rehearing. He contends the 23-day violation of the 30-day post-trial processing standard for forwarding the record of trial for appellate review warrants modest relief. Although not raised by the appellant, we also consider

---

[1] The first panel included a civilian employee who was assigned to the court by The Judge Advocate General. The court's sua sponte reconsideration occurred after the appointment of the same civilian employee to this court by the Secretary of Defense on 25 June 2013. The first two panels had identical members. On 15 April 2014, our superior court issued its decision in *United States v. Janssen*, 73 M.J. 221, 225 (C.A.A.F. 2014), holding that the Secretary of Defense did not have the legislative authority to appoint civilian employees as appellate military judges and that his earlier appointment to this court was "invalid and of no effect."
[2] The panel upon second reconsideration did not include the civilian employee.

whether the appellant was prejudiced by the clear error of attaching the personal data sheet (PDS) from 2010 to the 2014 staff judge advocate's recommendation (SJAR) when an updated 2014 PDS was admitted at the rehearing. We conclude the appellant is entitled to relief based on the excessive time for appellate review and adjust the sentence accordingly.

*Denial of Challenge for Cause*

The appellant alleges the military judge erred by denying the defense challenge for cause concerning panel member Major (Maj) BB. The appellant contends Maj BB should have been excused under the implied bias standard. We disagree.

Implied bias is "viewed through the eyes of the public, focusing on the appearance of fairness." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)) (internal quotation marks omitted). Therefore, appellate courts employ an objective standard when reviewing a military judge's decision regarding implied bias. *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004). We review issues of implied bias under a standard less deferential than abuse of discretion but more deferential than de novo. *Id.* (citing *United States v. Miles*, 58 M.J. 192, 195 (C.A.A.F. 2003)). In reviewing challenges for cause under the implied bias standard, military judges are required to follow the "liberal grant" mandate, which "supports the UCMJ's interest in ensuring that members of the military have their guilt or innocence determined 'by a jury composed of individuals with a fair and open mind.'" *United States v. James*, 61 M.J. 132, 139 (C.A.A.F. 2005) (quoting *United States v. Smart*, 21 M.J. 15, 18 (C.M.A. 1985)). "[I]n the absence of actual bias, where a military judge considers a challenge based upon implied bias, recognizes his duty to liberally grant defense challenges, and places his reasoning on the record, instances in which the military judge's exercise of discretion will be reversed will indeed be rare." *Clay*, 64 M.J. at 277.

During individual voir dire, Maj BB explained that he had previously served on a court-martial for sentencing of a drug case. He stated that the sentence in the other court-martial was "a year of confinement and then a less than honorable discharge." Maj BB indicated that he thought the prior sentence served as a "frame of reference" as to what he would consider a fair sentence. He answered that he understood the military judge's instruction that the earlier case did not have precedential value and that he could consider the full range of punishments. However, he also stated he would have a hard time considering no confinement and his knowledge of the other sentence would "still weigh in." Trial defense counsel challenged Maj BB. The military judge considered the challenge upon actual bias, implied bias and the liberal grant mandate, and denied the challenge to Maj BB. The military judge granted two of the defense's other challenges for cause and denied two (including Maj BB). Trial defense counsel used his peremptory

challenge on the other member. Maj BB became the president of the panel. The panel ultimately adjudged a sentence that did not include any confinement.

We find no error in the military judge's application of the liberal grant mandate to defense challenges for cause. The appellant "is entitled to have his case heard by members who are not predisposed or committed to a particular punishment, or who do not possess an inelastic attitude toward the punitive outcome." *United States v. Martinez*, 67 M.J. 59, 61 (C.A.A.F. 2008). Like the military judge, we find that Maj BB's answers revealed he did not have an inelastic predisposition nor was he unduly predisposed to a particular punishment. The responses by Maj BB are far different from a member who answered that he would be merciless in sentencing an appellant found guilty of rape, *see Clay*, 64 M.J. at 278, and the responses of a senior member that no punishment was not an option and there was no room in his Air Force for someone who used drugs, *Martinez*, 67 M.J. at 64. Maj BB explained that he had prior knowledge of another drug court-martial, understood that each case was different, and would make a decision based on the evidence produced in this particular court-martial. Article 25, UCMJ, 10 U.S.C. § 825, mandates that the convening authority detail members who are "best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." Prior experience as a court-martial member fits squarely within these qualifications. We would expect that military members with increased length of service will have knowledge of other punishments meted for other accused servicemembers, to include administrative, nonjudicial, and judicial punishments. Members should not be foreclosed from relying on their experience in determining an appropriate and just sentence in an individual case, as long as they demonstrate a willingness to consider each case on its own merits. We conclude that the military judge did not err in denying the challenge for cause.

*Errors in Staff Judge Advocate Recommendation*

Proper completion of post-trial processing is a question of law, which we review de novo. *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000). Failure to timely comment on matters in the SJAR, to include matters attached to it, forfeits[3] the issue unless there is plain error. R.C.M. 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436

---

[3] Rule for Courts-Martial 1106(f)(6) and *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005), both indicate that "waiver" occurs when counsel fails to comment on matters in the staff judge advocate's recommendation. However, our superior court's decision in *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009), recognizes that military courts had failed to "consistently distinguish between the terms 'waiver' and 'forfeiture.'" *Gladue* held that waiver is the "intentional relinquishment or abandonment of a known right," which precludes appellate review of an issue, while forfeiture is "the failure to make the timely assertion of a right" leading to plain error review on appeal. *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) (internal quotation marks omitted). Following *Gladue*, the term "forfeiture" should generally characterize the effect of a failure to timely comment on matters in the staff judge advocate's recommendation. *See United States v. Parker*, 73 M.J. 914 (A.F. Ct. Crim. App. 2014) (holding that the appellant forfeited, rather than waived, a claim that erroneous information was attached to the staff judge advocate's recommendation).

(C.A.A.F. 2005). Under a plain error analysis, the appellant bears the burden of showing: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right of the appellant." *Kho*, 54 M.J. at 65. Although the threshold for establishing prejudice in this context is low, the appellant must nonetheless make at least "some colorable showing of possible prejudice." *Scalo*, 60 M.J. at 437 (quoting *Kho*, 54 M.J. at 65) (internal quotation marks omitted).

When reviewing post-trial errors, we recognize the convening authority is an appellant's "best hope for sentence relief." *United States v. Lee*, 50 M.J. 296, 297 (C.A.A.F. 1999) (quoting *United States v. Bono*, 26 M.J. 240, 243 n.3 (C.M.A. 1988)) (internal quotation marks omitted). The convening authority, not the courts of criminal appeals, is empowered to grant clemency for equitable reasons. *United States v. Nerad*, 69 M.J. 138, 145 (C.A.A.F. 2010). "Because of the highly discretionary nature of the convening authority's action on the sentence, we will grant relief if an appellant presents 'some colorable showing of possible prejudice.'" *Kho*, 54 M.J. at 65 (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)); *see also Scalo*, 60 M.J. at 436–37.

At the rehearing, trial counsel admitted into evidence an updated PDS dated 5 June 2014. On 17 July 2014, the acting staff judge advocate signed an SJAR with two listed attachments: "1. AF 1359, 17 June 2010; 2. Personal Data Sheet, 16 June 2010." The 1 August 2014 SJAR addendum also lists these same two attachments. The first addendum incorrectly stated that the defense did not allege any legal errors. The convening authority signed an action that same day approving the adjudged sentence. A second SJAR addendum was signed on 15 August 2014, which correctly stated that the defense had alleged legal errors in the military judge's denial of challenges for cause. The second SJAR lists the same attachments. The convening authority withdrew the earlier action and issued a new action approving the adjudged sentence. Neither the SJAR, nor the 1 August 2014 addendum, nor the 15 August 2014 addendum lists the 2014 report of result of trial or the 2014 PDS as attachments.[4]

It was plain and obvious error to attach the 2010 PDS and report of result of trial and to exclude the 2014 documents. However, in this case we find no colorable showing of possible prejudice. The SJAR and trial defense counsel's clemency request for the appellant both listed the findings and sentence adjudged in both 2010 and 2014. The only differences in the 2014 PDS are that it shows the increase to basic pay and a length of service of 6 years, 9 months vice 2 years, 10 months. We are confident that the

---

[4] The record of trial actually contains the 2014 report of result of trial (AF Form 1359) and personal data sheet. However, we employ the principle of *expressio unis est exclusio alterius* ("That which is expressed specifically, acts to exclude others.") *See United States v. Clinkenbeard*, 44 M.J. 577, 578 n.1 (A.F. Ct. Crim. App. 1996). We therefore conclude that the explicit listing of only the 2010 AF Form 1359 and PDS excludes the unlisted 2014 forms, and these forms were not presented to the convening authority but inserted into the record at some later time.

convening authority would have been aware that basic pay has increased between 2010 and 2014. Likewise, the SJAR explained that the appellant was originally court-martialed in 2010 and was later ordered to a sentence rehearing held in 2014, which necessarily would have resulted in an increase to his length of service. We do not find any colorable showing of prejudice under these facts. *Cf. United States v. Wilson*, ACM 37486, unpub. op at 4 (A.F. Ct. Crim. App. 27 August 2014) (finding that the appellant made a colorable showing of possible prejudice when the convening authority was not presented with an updated personal data sheet admitted by the Government at the sentence rehearing that showed possible retirement eligibility).

*Appellate Delay*

In our previous opinions, we determined that the overall delay between the time of docketing and review by this court was facially unreasonable. *See United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). However after considering the totality of the circumstances and the entire record, we found that the appellate delay in this case was harmless beyond a reasonable doubt. *See id.* at 135–36 (stating that claims of post-trial and appellate delay should be reviewed using the four-factor analysis found in *Barker v. Wingo*, 407 U.S. 514, 530 (1972)); *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). The appellant now renews his assignment of error regarding prejudicial appellate delay and argues that his rehearing sentence which does not include confinement demonstrates that his earlier confinement was oppressive.

We review de novo whether an appellant has been denied the due process right to speedy post-trial review and whether any constitutional error is harmless beyond a reasonable doubt. *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). The time from docketing the case on 21 September 2010 to the date of our initial decision on 8 May 2013 was 960 days (2 years, 7 months, 17 days). When appellate review is not completed and a decision is not rendered within 18 months after docketing with the court, there is a presumption of unreasonable delay. *Moreno*, 63 M.J. at 142. The *Moreno* standards continue to apply as a case continues through the appellate process. *United States v. Mackie*, 72 M.J. 135, 136 (C.A.A.F. 2013). The *Moreno* standard is not violated when each period of time used for the resolution of legal issues between this court and our superior court is within the 18-month standard and there is no malicious delay. *Id.*; *United States v. Roach*, 69 M.J. 17, 22 (C.A.A.F. 2010). Our superior court has not resolved whether the *Moreno* clock is reset when the service court issues an initial decision or if it continues to run through the time of motions for reconsideration and any subsequent opinions. Because we find that the time from docketing to our initial 8 May 2013 decision violated the *Moreno* standard, we need not decide if the *Moreno* standards would be violated if the initial appellate decision was timely but subsequent opinions after reconsideration exceeded 18 months after initial docketing.

Because the time from docketing to the initial decision violates the *Moreno* standards, this presumptively unreasonable delay triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), adopted in *Moreno*, 63 M.J. at 135. Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005) (citing *Barker*, 407 U.S. at 530).

The delay is presumptively unreasonable so it weighs in favor of the appellant, and we turn to the other factors. *Moreno*, 63 M.J. at 136. The appellant made a request for speedy appellate review on 21 September 2012, two years after docketing with this court. The appellant had not made any earlier demands. However, because the initial decision was not issued until 229 days later (7 months, 17 days after his request), we find this factor weighs in favor of the appellant.

As for the reasons for the delay, the Government argues that the appellant is responsible for 352 days from the time of docketing until the time he filed his first assignment of errors. However, the requests for delay do not indicate that they benefitted the appellant in any way other than by having appellate counsel prepare a well written brief. "The Government bears responsibility for unreasonable delay during appeal occasioned by the workload of appellate defense counsel." *Id.* at 138. The Government then received three extensions of time and filed its brief 95 days later. The appellant timely filed a reply brief 7 days later on 20 December 2011. The next period of delay was for the court to issue its initial decision, 505 days later (16 months, 18 days). Our superior court applies "a more flexible review of this period, recognizing that it involves the exercise of the Court of Criminal Appeals' judicial decision-making authority." *Id.* at 137. In *Moreno*, our superior court held that "a period of slightly over 6 months is not an unreasonable time for review by the Court of Criminal Appeals." *Id.* at 137–38. We are unsure as to whether they would extend this same reasoning to a period of over 16 months for review of a record of trial that consisted of 306 pages, with 4 prosecution exhibits, 10 defense exhibits, and 10 appellate exhibits. We conclude that this factor weighs in favor of the appellant.

When assessing prejudice for a due process post-trial delay analysis, we examine "three similar interests for prompt appeals: (1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired." *Moreno*, 63 M.J. at 138–39. The appellant had a full sentencing rehearing and did not identify any issues that interfered with his ability to present a full sentencing case. His trial defense counsel submitted all the documents that were submitted at his first court-martial including a favorable character statement from his supervisor when he was on active-duty. The appellant also submitted an additional eight new character

statements from friends and family members and ten new photographs that provided evidence of his rehabilitation and gainful employment after his first court-martial. A former Airman who had received and used Ecstasy with the appellant also testified. The witness testified that he took responsibility for his own drug use, the appellant never pressured him to use, and he did not blame the appellant. The second factor requires "an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* at 140. The appellant provided information regarding his difficulties resulting from his conviction but did not provide any evidence that the delay in appellate processing caused any particularized anxiety or concern. At the sentence rehearing, the hardships were a result of his recall to active duty and its disruption of his civilian employment. The appellant also indicated there was an administrative error in his pay and allowances when he was recalled to active duty. Thus it was not the delay in the appellate process but the success in the appellate process that caused financial hardship. The second and third sub-factors do not favor the appellant.

We turn to the issue of "oppressive incarceration." The appellant argues that because he served his original sentence of 1 year confinement and the rehearing resulted in a sentence of no confinement that he suffered "oppressive incarceration." "[I]f an appellant's substantive appeal is meritorious and the appellant has been incarcerated during the appeal period, the incarceration may have been oppressive." *Moreno*, 63 M.J. at 139. Persuasively, in the context of pretrial confinement, our superior court recently clarified that it has "never held that pretrial confinement which exceeds an adjudged sentence is per se prejudicial." *United States v. Danylo*, 73 M.J. 183, 188 (C.A.A.F. 2014). The Supreme Court "held that 10 months of pretrial confinement . . . was not prejudicial where there was no adverse impact on the defendant's ability to present a defense." *Id*. (citing *Barker*, 407 U.S. at 534). Even if the appellate review had been timely, the appellant likely would have completed his sentence to confinement before any relief was ordered. We therefore conclude that the appellant has not suffered any "oppressive incarceration" and therefore he has not shown any prejudice.

When there is no showing of prejudice under the fourth *Barker* factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Having considered the totality of the circumstances and the entire record, when we balance the other three factors, we find the post-trial delay in this case to not be so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system. We are convinced the error is harmless beyond a reasonable doubt.

*Failure to Forward the Record of Trial in a Timely Manner*

After the rehearing, the convening authority signed the action on 15 August 2014.[5] The case was docketed with the appellate courts 41 days later on 24 September 2014. This exceeds the 30-day standard in *Moreno*. Because the delay is presumptively unreasonable, it triggers an analysis of the four *Barker* factors, as discussed above. Upon our review of the factors, we conclude the delay was harmless under the *Barker* analysis.

*Tardif Relief*

Additionally, Article 66(c), UCMJ, 10 U.S.C. § 866(c), empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Brown*, 62 M.J. 602, 606–07 (N.M. Ct. Crim. App. 2005), our Navy-Marine Corps Court colleagues identified a "non-exhaustive" list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Among the non-prejudicial factors are the length and reasons for the delay, the length and complexity of the record, the offenses involved, and the evidence of bad faith or gross negligence in the post-trial process. *Id.* at 607. In this analysis we deem it appropriate under the facts of this case to consider the full length of the delay from initial docketing to our December 2013 decision in reconsideration. The first reconsideration was ordered sua sponte by the court, and the second was at the request of the Government. This was a total time period of 1172 days (3 years, 2 months, 15 days). We also consider that even after this overly lengthy appellate review period, the Government failed in the simple task of timely forwarding the record for docketing after the convening authority's action. While the delay at this court may have been related to the number of personnel assigned to the court and other related issues, we are mindful of our superior court's emphasis that the established benchmarks do not create a *free* period, and "personnel and administrative issues . . . are not legitimate reasons justifying otherwise unreasonable post-trial delay." *United States v. Arriaga*, 70 M.J. 51, 57 (C.A.A.F. 2011). The brevity and straightforwardness of the record also weighs in favor of the appellant. We also consider the evidence in the record regarding the facts and circumstances of the offenses to include the testimony in the rehearing from the appellant's cohort. We conclude that sentence relief under Article 66, UCMJ, is warranted and order appropriate relief. We therefore affirm only so much of the approved sentence as provides for a bad-conduct discharge.

---

[5] The convening authority's action on 1 August 2014 was withdrawn by this action. The appellant appears to have counted the days from the first action until docketing. We have decided that the second action is the correct one to use to start this time period.

*Conclusion*

We affirm only so much of the approved sentence as provides for a bad-conduct discharge. The findings and the sentence, as modified, are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ. Accordingly, the approved findings and the sentence, as modified, are

AFFIRMED.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court