# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Airman First Class NATHAN G. WILSON-CROW
### United States Air Force

### ACM 38706

### 25 February 2016

Sentence adjudged 26 April 2014 by GCM convened at Joint Base San Antonio – Lackland, Texas. Military Judge: Donald R. Eller, Jr.

Approved Sentence: Dishonorable discharge, confinement for 2 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Jeffrey A. Davis.

Appellate Counsel for the United States: Major Mary Ellen Payne; Major Meredith L. Steer; and Gerald R. Bruce, Esquire.

Before

ALLRED, TELLER, and ZIMMERMAN
Appellate Military Judges

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

TELLER, Senior Judge:

Appellant was convicted, pursuant to mixed pleas, of abusive sexual contact, two specifications of sexual abuse of a child, indecent exposure, assault consummated by a battery, and two specifications of providing alcohol to a minor in violation of Articles 120, 120b, 120c, 128, and 134, UCMJ; 10 U.S.C. §§ 920, 920b, 920c, 928, 934. A Panel of officer members sentenced him to a dishonorable discharge, confinement for 2 years, forfeiture of all pay and allowances, and reduction to E-1. The sentence was approved as adjudged on 25 October 2014.

Appellant argues that:  (1) the evidence was factually and legally insufficient to support his conviction for one specification of sexual abuse of a child, (2) the military judge erred by improperly instructing the panel on that offense, (3) the trial counsel engaged in improper findings argument, (4) the evidence was factually and legally insufficient to support his conviction for abusive sexual contact, and (5) the Government's violation of the 120-day post-trial processing standard for convening authority action warrants sentence relief.  Finding no error that materially prejudices a substantial right of Appellant, we affirm the findings and sentence.

*Background*

Appellant, an Air Force photographer, volunteered to attend a high school Junior Reserve Officer Training Corps (JROTC) three-day leadership and teambuilding camp to serve as the official photographer for the event.  During the event, but without the knowledge of the adult organizers, the students engaged in a series of "truth-or-dare" games.  Appellant, then a 21-year-old senior airman, joined in three of these games with the students.  While the first two sessions involving Appellant were fairly innocuous, at the conclusion of one game, he slapped the buttocks of a 16-year-old female student without her consent.  The third game involving Appellant escalated to more sexually-oriented dares, including the removal of some upper garments and Appellant kissing the exposed nipple of an 18-year-old female student and exposing his penis.  Both acts occurred in the immediate presence of a group of students, at least one of whom had not reached the age of 16.  The student who was under 16 did not see Appellant's penis because her view was blocked by the elbow of another student sitting between her and Appellant.  During the game, Appellant also massaged the backs of two of the female students from time to time.  During one massage, Appellant pressed his penis, through the pants he was wearing, against the bare back of one of the students for a period of three to five seconds.  This contact was also without the student's consent.  On two separate occasions, which had nothing to do with the JROTC event, Appellant also provided alcoholic beverages to a minor.

*Specific Intent Required for the Offense of Sexual Abuse of a Child*

In separate assignments of error, Appellant challenges his conviction for one specification of sexual abuse of a child, asserting three different errors related to the specific intent requirement of the offense.  In the specification at issue, Appellant was charged with "commit[ting] a lewd act upon [the child] . . . by intentionally exposing [his] penis to [the child], with intent to arouse or gratify the sexual desires of [Appellant]."  Appellant argued at trial, and now again on appeal, that this specification required the Government to prove that Appellant specifically intended for the child to see his penis.  The Government argued that it was sufficient to prove that Appellant intentionally exposed his penis in her presence, as long as such exposure was done with the intent to arouse or gratify his sexual desires. The military judge ruled in favor of the Government, permitting argument and providing instructions to that effect.    The

members, based upon those instructions, convicted Appellant of sexual abuse of a child for exposing his penis in the child's presence, even though she did not factually see it. Since all three assertions of error turn on our interpretation of the statute, we turn first to that analysis then address the specific assignments of error in turn.

*Specific Intent under Article 120b*

Appellant argues that, despite the particular specific intent set out in Article 120b(h)(5)(C), UCMJ, 10 U.S.C. § 920b(h)(5)(C) (2012), we should read into the statute an additional requirement of specific intent. The first step of statutory construction is clear: "[i]f the statutory language is plain, we must enforce it according to its terms." *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015). However, "[t]he meaning – or ambiguity – of certain words or phrases may only become evident when placed in context." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000). Appellant apparently argues that such is the case here, asserting that

> [t]he government failed to prove two necessary crucial elements of the charged offense: (1) that Appellant exposed himself with the specific intent that [the child] observe/see his penis, and (2) that he exposed his penis for the purpose of gratifying or arousing his sexual desires by the fact that [the child] would observe/see his penis.

Appellant does not cite any authority in the statute, the *Manual for Courts-Martial* (*MCM*), or case law for his assertion that these additional elements must be proven.

Article 120b(c), UCMJ, 10 U.S.C. § 920b(c), provides that "[a]ny person subject to this chapter who commits a lewd act upon a child is guilty of sexual abuse of a child and shall be punished as a court-martial may direct." Lewd acts are further defined in the statute. As it relates to this specification, lewd act means "intentionally exposing one's genitalia, anus, buttocks, or female areola or nipple to a child by any means, including via any communication technology, with an intent to abuse, humiliate, or degrade any person, or to arouse or gratify the sexual desire of any person." *MCM*, pt. IV, ¶ 45b.a.(h)(5)(C) (2012 ed.).

Our first task is to determine if the definition describing the offense is plain. We find that it is. The language of the statute sets out unambiguously the specific intent necessary for conduct to constitute an offense. The specific intent expressed in the statute, and more particularly as alleged in the specification at issue, requires only that Appellant had the intent to arouse or gratify his sexual desires at the time he exposed himself. The statute makes no connection between arousal or gratification and the circumstances Appellant cites in asserting additional elements of the offense, namely the intent that the child see the body part exposed or that gratification or arousal be derived specifically from the child's observation of the exposed body part. In light of such a

clear expression of specific intent in the statute that plainly does not include the intent asserted by Appellant, we decline to read such an intent requirement into the statute ourselves.

We see this case as distinguishable from the line of cases in which courts parse statutory language to derive a requirement for a mens rea, or guilty state of mind, from a statute that would otherwise criminalize innocent conduct or create a strict liability offense where one was not plainly intended by Congress.

Courts have, in certain circumstances, read elements of specific intent into the language of a statute when the literal wording did not reflect the mens rea apparent from the statutory scheme. In *Liparota v. United States*, 471 U.S. 419, 424–34 (1985), for example, the Supreme Court interpreted the word "knowingly" in a food stamp fraud case to mean not only that the Appellant had to have knowingly engaged in the transaction at issue, i.e., that the transaction was not an accident or mistake, but also that the Appellant knew that the transaction was contrary to the law or applicable regulations. Similarly, in *Staples v. United States*, 511 U.S. 600, 605–19 (1994), the Supreme Court interpreted a statute making it a crime to possess an unregistered firearm to require not only that the Appellant knew he possessed the weapon at issue, but also that he knew of the characteristics making it a firearm under the law.

Appellant makes a similar argument here. Appellant suggests that, like the statutes in *Liparota* and *Staples*, the language of Article 120b(h)(5)(C) criminalizing the act of "intentionally exposing [a proscribed body part] to a child" should be read to include additional specific intent elements. Just as in *Liparota*, where the Court held that the word "knowingly" included knowledge of both the transaction and its prohibited nature, Appellant implicitly asserts that the word "intentionally" should be read to require that his exposure was both volitional and specifically directed "to a child."

We find that argument unconvincing. Unlike the statutes at issue in *Liparota* and *Staples*, Article 120b explicitly includes a mens rea. In *Liparota* and *Staples*, the Court confronted statutes that dispensed with the "firmly embedded" common law requirement of including some mens rea in the establishment of a crime. *Staples*, 511 U.S. at 605 ("[T]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American jurisprudence." (quoting *United States v. United States Gypsum Co.*, 438 U.S. 422, 436–37 (1978))). The Court's holding in *Staples*, for example, "depend[ed] critically on [its] view that if Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, and to subject them to lengthy prison terms, it would have spoken more clearly to that effect." *Id*. at 620. The conduct proscribed by Congress in Article 120b.a.(h)(5)(C), by contrast, was by definition not innocent. Further, the prohibition on this sort of conduct has longstanding roots in our jurisprudence. As our superior court said in *United States v. Brown*, 13 C.M.R. 10, 17 (C.M.A. 1953),

> [i]n the crime of taking indecent liberties with a minor, the act must be done with intent to gratify the lust, passions, or sex desires of either the person committing the act or of the child. It should be readily apparent that when the act is committed with that specific intent, the potentiality for harm to the child is increased. Moreover, taking indecent liberties is the first step toward more serious sex crimes of a perverted nature and it would be shocking to find out the President intended to class them with petty offenses.

To counter that potentiality for harm, Congress has spoken clearly by establishing the mens rea required for the offense of sexual abuse of a child under Article 120b. Thus, we cannot add the additional heightened specific intent Appellant urges in this case.

*Factual and Legal Sufficiency*

Based upon the argument outlined above, Appellant contends that the evidence was factually and legally insufficient to sustain his conviction of Specification 1 of Charge I. We review issues of factual and legal sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are "convinced of the [Appellant]'s guilt beyond a reasonable doubt." *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington,* 57 M.J. at 399.

The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *Turner*, 25 M.J. at 324). The term reasonable doubt does not mean that the evidence must be free from conflict. *United States v. Lips,* 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Gutierrez*, 74 M.J. 61, 65 (C.A.A.F. 2015) (quoting *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001)). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Day*, 66 M.J. 172, 174 (C.A.A.F. 2008) (citing *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993)).

In this case, since we are not persuaded that the Government was required to prove the specific intent advanced by Appellant, we find that the military judge properly instructed the panel that the offense of sexual abuse of a child alleged in Specification 1 of Charge I had only two elements:

> (1) That within the continental United States, between on or about 26 April 2013 and on or about 28 April 2013, the accused committed a lewd act upon [the child], to wit: intentionally exposing the accused's penis with the intent to arouse or gratify the accused's sexual desire; and

> (2) That at the time [the child] had not attained the age of 16 years.

Taking the evidence in the light most favorable to the prosecution, we find that there was sufficient evidence to support the conviction. The child testified that she and Appellant were part of a group clustered around a picnic table at the camp. She was seated at the table, and Appellant was standing behind some other students who were seated on the opposite side of the table. After being dared to expose his penis long enough to say a silly phrase, Appellant pulled down the front of his own pants just long enough to repeat that phrase. While the child did not see Appellant's penis, other students present at the time testified that it was exposed when Appellant pulled down his pants. The exposure was plain enough for one of the students to discern whether Appellant was circumcised. His penis was described as partially erect. In the light most favorable to the prosecution, Appellant's partial erection alone constitutes sufficient circumstantial evidence for a reasonable factfinder to conclude that he exposed himself to gratify his sexual desires. Appellant's conviction was legally sufficient.

Similarly, after making allowances for not having personally observed the witnesses, we ourselves are convinced of Appellant's guilt beyond a reasonable doubt. Appellant concedes in his assignment of error that he exposed his penis while the child was present and that she was under the age of 16. Appellant solely challenges the sufficiency of the evidence of his intent. Appellant argues that "it seems clear he had no idea he was going to be dared to expose his penis" and that the best explanation for his partial erection was the behavior involved in the dares preceding his indecent exposure, not the exposure itself. We find that argument unconvincing and off the mark. First, we are not convinced Appellant "had no idea" such a dare might be made. We find it entirely foreseeable that a game of "truth or dare" that had already resulted in two of the female participants removing their shirts and bras might advance to a dare for Appellant to expose his penis. In determining whether Appellant had the intent to gratify his sexual desires, we consider his act of exposing his penis in the context of all the surrounding circumstances. In a game earlier that day, Appellant exhorted a student kissing another during a dare to "give her tongue" or words to that effect. He used an application on his

phone designed to generate sexually-oriented dares during his game with the students. After the game, he made a thinly-veiled invitation for the students to join him in his tent. In the context of the evidence of his behavior prior to and after he exposed himself, we are convinced beyond a reasonable doubt that his participation in the game and his conduct in the dares that made up the game, including specifically his intentional exposure of his penis, were intended to arouse and gratify his sexual desires. We find the evidence factually sufficient to sustain the finding of guilt as to this specification.

*Instructions*

Appellant next asserts that the military judge erred by failing to instruct the panel that the specific intent discussed above constituted elements of the offense, as well as by failing to give tailored instructions in response to a panel member question. Whether a panel was properly instructed is a question of law reviewed de novo. *United States v. Payne*, 73 M.J. 19, 22 (C.A.A.F. 2014) (citing *United States v. Maynulet*, 68 M.J. 374, 276 (C.A.A.F. 2010)). However, where counsel fails to object to omission of an instruction at trial, we review the military judge's instruction for plain error. *Id.* (citing *United States v. Tunstall*, 72 M.J. 191, 193 (C.A.A.F. 2013)); R.C.M. 920(f).[1] The military judge has an independent duty to instruct the members correctly and fully on all issues raised by the evidence. *United States v. Thomas*, 11 M.J. 315, 317 (C.M.A. 1981) (citations omitted).

As discussed above, we conclude that the military judge properly instructed the members on the elements of the offense. Accordingly, Appellant has failed to meet his burden to show error on that aspect of his claim. We therefore proceed to the question of whether failure to provide a tailored instruction in response to a question constituted plain error.

Just prior to closing arguments on the merits of the case, the military judge fielded a question from one of the members. After the military judge provided the standard instructions on the offenses, to which neither party objected, the following colloquy occurred between one of the members and the military judge:

> [Court Member]: I have a procedural question. Is there a tech from the instructions before—is there a technical definition of the intent to arouse or gratify the sexual desires or is that a common sense interpretation?

> [Military Judge]: We'll start with that because I do not provide you any more instructions than what I gave you before.

---

[1] Although we recognize that the rule describes failure to object as "waiver," this is in fact forfeiture. *See United States v. Sousa*, 72 M.J. 643, 651–52 (A.F. Ct. Crim. App. 2013).

[Court Member]:  Okay.

[Military Judge]:  And so what I would suggest to you is this. You're going to have—I've never sat where you're sitting. I've sat up here for a long time; I've never sat out there but I can imagine that as the proverbial fire hydrant is flowing and we're trying to give you sips, it's a lot of information. My suggestion would be this. I'm going to give you these written instructions in a few minutes. You'll take them back there and start talking about them and if you need further clarification just pass that in a note on the issues that you are concerned about or confused about in any way and then I will do my best to clarify. But let's start with that idea and ma'am [addressing the president of the panel], if you would—if there are questions, just send everything out under your signature so I can't attribute anything that [a specific member, for example] wanted to know about this. [If] it all comes out under your signature there is not attribution to the rest of the panel. So that would be my suggestion, sir [addressing the court member who raised the question], is just sit back and it may or may not make more sense once you get to see it on paper. All right? Trial counsel, you may argue.

After argument and procedural instructions, the court closed for deliberations, and no member ever raised the matter again.

We find no plain error in the military judge's handling of the question. Although Appellant argues that the military judge ignored the question, we disagree. The member's question posed two alternatives, the closing one of which was that they might apply "a common sense interpretation" of the phrase. The military judge responded "[w]e'll start with that…" before attempting to reassure the panel by advising them they would get the full instructions in writing with time to consider what they meant. We see no legally significant difference between that exchange, and one in which the military judge delivers the common admonition for the members to interpret the statutory language using the normal common meaning of the words. "Words generally known and in universal use do not need judicial definition." *Payne*, 73 M.J. at 26 n.10 (quoting *United States v. Nelson*, 53 M.J. 319, 321 (C.A.A.F. 2000)). Even if the military judge could have elaborated on how the members should construe the phrase, in the absence of any citation by Appellant to case law on the matter, or a statutory or regulatory explanation for the phrase, he has not met his burden of showing that any error in declining to elaborate constituted plain error.

*Argument*

In his final assertion of error on Specification 1 of Charge I, Appellant argues that trial counsel engaged in improper argument. First, he alleges that trial counsel recounted facts not in evidence. Second, he posits that trial counsel "changed Charge I, Specification 1 from a specific intent crime into a general intent crime, thereby lowering the government's burden of proof."

Failure to object to improper argument before the military judge begins to instruct the members on findings constitutes waiver of the objection.[2] *See* R.C.M. 919. We review such arguments for plain error. *See United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005). Under plain error review, Appellant has the burden of showing there was error, that the error was plain or obvious, and that the error materially prejudiced a substantial right of the Appellant. *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011).

Appellant argues that trial counsel improperly injected facts not in evidence into his argument. In particular, Appellant claims that trial counsel's argument that "[Appellant is] not somebody that just got coaxed or dared into exposing his penis and saying a sentence" was improper. Appellant bases his first argument on the premise, recounted in his assignment of error, that "[i]t is indisputable that Appellant only exposed his penis after being dared to do so by another member of the group, he himself had no part in the dare itself, and he only exposed himself, consistent with the dare, long enough to say a silly phrase that was part of the dare." We reject the premise that a 21-year-old senior airman "had no part" in a dare that was part and parcel of game of truth or dare that he himself facilitated. Appellant's attempt at abdicating his responsibility to a group of high school students who "dared" him into an act of indecent exposure is unconvincing at best. Trial counsel's argument was a fair inference from facts in evidence and was not improper.

We also reject the assertion that trial counsel's argument converted the offense into a general intent crime. Appellant argues that "[t]rial counsel's argument invited the members to convict Appellant simply because he exposed his penis to a group of individuals that included someone under the age of sixteen years who could have possibly observed/seen Appellant's exposed penis." Factually, this assertion is incorrect. Trial counsel argued, consistent with the military judge's instructions, that the exposure had to be accompanied by the intent to gratify his sexual desires. As discussed above, we decline to read any additional specific intent into the statute and find that trial counsel's argument did not mischaracterize the offense.

Appellant has failed to meet his burden to show that either aspect of trial counsel's argument was improper, and we reject this assignment of error.

---

[2] As noted in the reference to R.C.M. 920 above, we construe the R.C.M. 919 reference to waiver as forfeiture. *Id.*

*Factual and Legal Sufficiency of the Abusive Sexual Contact Conviction*

In addition to his arguments about Charge I, Specification 1, Appellant also asserts that the evidence was factually and legally insufficient to support his conviction of Specification 1 of the Additional Charge, which alleged that he pressed his clothed penis against the back of one of the students with the intent to gratify his own sexual desires, and that under the circumstances such contact constituted bodily harm. We apply the same standard to this factual and legally sufficiency challenge as set out above. As with Appellant's assignment of error above, he challenges the sufficiency of the evidence of his intent to gratify his sexual desire.

We find the conviction legally and factually sufficient. Having paid particular attention to the matters raised by Appellant, we find the evidence legally sufficient to support his conviction for abusive sexual contact. Although the student victim's testimony was equivocal on her personal belief concerning Appellant's intent when pressing his penis against her back, we do not find her belief alone conclusive. We evaluate her testimony in light of all the other evidence including Appellant's state of partial erection, the duration of the contact, as well as Appellant's conduct during the game and the hours that led up to it. When viewed in the light most favorable to the prosecution, we are satisfied that the evidence would allow a reasonable fact finder to conclude that Appellant pressed his penis against the student's bare back for three to five seconds with the intent to gratify his sexual desire. Moreover, we ourselves, after making allowances for not having personally observed the witnesses, are convinced of his guilt beyond a reasonable doubt.

*Post-Trial Delay*

Finally, Appellant asserts that this court should grant him meaningful relief in light of the 182 days that elapsed between completion of trial and the convening authority's action. Under *United States v. Moreno*, courts apply a presumption of unreasonable delay "where the action of the convening authority is not taken within 120 days of the completion of trial." 63 M.J. 129, 142 (2002). Appellant does not assert any prejudice, but instead argues that the court should nonetheless grant relief under *United States v. Tardif*, 57 M.J. 219, 223–24 (C.A.A.F. 2002).

This court set out a non-exhaustive list of factors we consider when evaluating the appropriateness of *Tardif* relief in *United States v. Bischoff*, 74 M.J. 664 (A.F. Ct. Crim. App. 2015). *See also United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015) (articulating factors specifically tailored to answer the question of whether *Tardif* relief is appropriate). The factors include the length and reasons for the delay, the length and complexity of the record, the offenses involved, and the evidence of bad faith or gross negligence in the post-trial process. Appellant has not asserted any additional factors that merit consideration in this case.

The time required to process this case through convening authority action exceeded the standard by 62 days. The Government obtained a declaration establishing that the reasons for the delay were twofold: a delay in transcribing the record due to other cases in the court reporter's queue as well as fairly routine matters of compiling and serving an accurate and complete record of trial. The record itself was substantial, comprised of a 1,404-page transcript spanning 8 volumes. Appellant was convicted of several serious charges in this case, including sexual conduct with minors during a JROTC-sponsored event. Finally, there was no evidence of bad faith or gross negligence. The delay in this case was primarily occasioned by the length of the record and the pre-existing workload of the court reporter. Although court reporter workload is completely within the control of the Government, we recognize that forwarding the audio in this case for transcription by another reporter, only to need verification and assembly by the reporter present for the trial, would likely have not expedited the proceedings in this case. On the whole, we find the delay, although presumptively unreasonable, to be reasonable in this case and conclude no *Tardif* relief is warranted.

## *Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are

AFFIRMED.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court