# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39157**

————————————

**UNITED STATES**
*Appellee*

v.

**Mattox A. DAVIS**
Airman (E-2), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 10 April 2018

————————————

*Military Judge:* J. Wesley Moore.

*Approved sentence:* Dishonorable discharge, confinement for 40 days, reduction to E-1, and a reprimand. The sentence was adjudged 20 May 2016 by GCM convened at Tyndall Air Force Base, Florida.

*For Appellant:* Major Patrick A. Clary, USAF.

*For Appellee:* Major Mary Ellen Payne, USAF; Captain Anne M. Delmare, USAF.

Before HARDING, BENNETT, and HUYGEN, *Appellate Military Judges.*

Judge BENNETT delivered the opinion of the court, in which Senior Judge HARDING and Judge HUYGEN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

BENNETT, Judge:

A general court-martial composed of officer and enlisted members found Appellant guilty, contrary to his pleas, of one specification of sexual assault in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10

U.S.C. § 920. Appellant was sentenced to a dishonorable discharge, confinement for 40 days, reduction to the grade of E-1, and a reprimand. The convening authority approved the adjudged sentence, but waived mandatory forfeitures of pay for the benefit of Appellant's dependent child.

Appellant asserts two assignments of error: (1) Whether Appellant's conviction is legally and factually sufficient, and (2) Whether Appellant's request for counsel during an interview with law enforcement was improperly introduced to the members during the Government's case-in-chief. We find no relief is warranted and affirm the findings and sentence.

## I. BACKGROUND

Prior to the sexual assault for which Appellant was charged and convicted, Appellant and his wife, KD, had experimented with anal sex on one occasion. Afterwards, because the anal sex hurt, KD made Appellant promise to never attempt it again. From time to time, Appellant would suggest that they should have anal sex, but KD declined each time.

For KD's twenty-second birthday, she went out with her friend AS. The two visited multiple bars and consumed mixed drinks until KD passed out. AS had to call her husband, Staff Sergeant (SSgt) DS, to pick them up because AS was too drunk to drive.[1] During the ride home, KD remained unconscious except when she vomited out of the window of SSgt DS's pick-up truck. When they arrived at Appellant and KD's house, SSgt DS carried KD inside and placed her into Appellant's arms.

Appellant helped KD to their bathroom and held her hair while she vomited. He then helped KD into a bathtub where she faded in and out of consciousness. Eventually, Appellant helped her out of the bathtub and into their bed.

Appellant later confessed, during an interview with the Air Force Office of Special Investigations (AFOSI), that he had anal sex with KD after they went to bed, but he adamantly denied doing so without her consent. According to Appellant, KD immediately started to kiss him after they got into bed, and she thrust her buttocks toward him in a way that made him think she was interested in having anal sex. He penetrated her anus with his penis, but removed it when KD screamed and started to cry.

---

[1] SSgt DS testified under a grant of testimonial immunity because, sometime after the incident, KD, AS, and SSgt DS lived together and engaged in a polyamorous affair.

KD's memory of the event was fragmentary at best, but she testified that she would not have given Appellant consent to have anal sex with her. She explained that after their first experience, it was the one sexual activity she would not engage in. KD did, however, remember waking up as Appellant penetrated her because of the intense pain she felt. The next morning, KD noticed that she was bleeding from her anus and she confronted Appellant. KD was angry to learn Appellant had anal sex with her. She accused Appellant of taking advantage of her, which he denied. Afterwards, KD left Appellant and the couple eventually divorced.

A few days after the sexual assault, subsequent to conversations she had with her mother and AS, KD agreed to go for a sexual assault examination. The nurse examiner found no bleeding or any other evidence of a sexual assault.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Pursuant to Article 66(c), UCMJ, 10 U.S.C. § 866(c), we "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and [determine], on the basis of the entire record, should be approved."

"The test for legal sufficiency is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (quoting *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002)), *aff'd*, ___ M.J. ___, No. 17-0456, 2018 CAAF LEXIS 177 (C.A.A.F. 22 Mar. 2018). Importantly, "[t]he term reasonable doubt . . . does not mean that the evidence must be free from conflict." *Id.* (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)). "In applying this test, 'we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution.'" *Id.* (quoting *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001)).

"The test for a factual sufficiency review . . . is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, *the members of the service court are themselves convinced of appellant's guilt beyond a reasonable doubt*.'" *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) (quoting *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each

required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002)).

The elements of sexual assault, as charged in this case, are: (1) That Appellant committed a sexual act upon KD, to wit: penetrating her anus with his penis; (2) That the accused did so by causing bodily harm to KD, to wit: penetrating her anus with his penis; and (3) That the accused did so without the consent of KD.

Appellant acknowledged to his AFOSI interviewers that, on the night in question, KD was more intoxicated than usual, SSgt DS carried KD into the house, Appellant held KD's hair while she vomited, and KD was in and out of consciousness while she bathed before getting into bed. Furthermore, after the sexual assault, Appellant wrote KD a text message that read, "I agree we shouldn't have had sex that night[.] I was wrong[.] I've looked it up and it's not something I'll ever be proud of."

Based on the context in which this text message was written and Appellant's interview with AFOSI, we find that "it" meant the anal sex Appellant had with KD. The fact that he admitted he was not proud of what he did is compelling evidence that Appellant knew KD had not consented, on the night in question, to having anal sex with him.

On appeal, Appellant renews the argument he made at trial that even if KD had not consented to anal sex, it was reasonable for Appellant to have the mistaken belief that she had consented.[2] Appellant suggests that the entire episode occurred while KD was awake and conscious enough to give Appellant the impression that she was consenting, but not able to form memories of the event and, hence, unable to recall the fact that she gave or seemed to give consent.

KD unequivocally testified it was impossible that she willingly had anal sex with Appellant, and that Appellant knew she would never willingly have anal sex with him. To be persuaded by Appellant's argument, we would have to believe that, despite her prior refusal to engage in anal sex and her condition that evening, KD suddenly awoke from her stupor and desired anal sex, or that it was reasonable, under all the circumstances, for Appellant to mistakenly believe she consented to having anal sex. We are not so persuaded.

---

[2] Mistake of fact as to consent is a defense to the sexual assault charged in this case. It requires that an accused, due to ignorance or mistake, incorrectly believed the victim consented to the sexual act. To be a viable defense, the mistake of fact must have been reasonable under all the circumstances. *See* Rule for Courts-Martial 916(j)(1).

Considering the evidence in the light most favorable to the prosecution, as we must, we find that a reasonable factfinder could have found Appellant guilty of all the elements of the charged sexual assault beyond a reasonable doubt. *See Wheeler*, 76 M.J. at 568. Furthermore, we ourselves are convinced of Appellant's guilt beyond a reasonable doubt. *See Rosario*, 76 M.J. at 117. Specifically, we find that there was proof, beyond a reasonable doubt, Appellant penetrated KD's anus with his penis, that KD did not consent to having anal sex with Appellant, and that, under all the circumstances, it would have been unreasonable for Appellant to believe that she had. Therefore, we find Appellant's conviction both legally and factually sufficient.

## B. Appellant's Request for Counsel

Appellant argues that it was plain error and a violation of Military Rule of Evidence 301(f)(2) for the military judge to allow a video recording of Appellant's interview with AFOSI to be played for the members during the findings portion of trial. Appellant bases his argument on the claim that, during the interview, he twice requested the assistance of counsel.

Since there was no objection at trial, we review this issue for plain error. *See United States v. Cary*, 62 M.J. 277, 278 (C.A.A.F. 2006) (citing *United States v. Powell*, 49 M.J. 460, 463, 465 (C.A.A.F. 1998)). "The plain error standard is met when '(1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights.'" *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008) (quoting *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007)).

A military judge has an obligation to prevent court-martial members from hearing evidence that is inadmissible, even when there is no objection. Mil. R. Evid. 103(e). Military Rule of Evidence 301(f)(2) prohibits, among other things, the admission of evidence that the accused requested counsel during official questioning and in exercise of Article 31, UCMJ, 10 U.S.C. § 831.

During findings, the Government played a video-recording of Appellant's interview with AFOSI. At various times during this interview, Appellant was advised of his right to counsel. We find that Appellant did not invoke his right to counsel. In fact, it is clear from the record that the opposite is true. Appellant was properly advised of his right to counsel, he acknowledged his understanding of this right, and he knowingly waived it multiple times during the interview.[3] Therefore, the military judge committed no error, plain or

---

[3] In his brief, Appellant includes two excerpts from his interview with AFOSI. In the first excerpt, Appellant unambiguously waived his right to counsel and affirmed his desire to continue with his questioning. The second excerpt includes what appears to

*(Footnote continues on next page)*

otherwise, when he admitted the video-recording of Appellant's AFOSI interview.

### C. Post-Trial Processing Delay

It took 123 days from the day Appellant was sentenced for the convening authority to take action. Appellant notes the length of time in a footnote to his assignment of errors, but he raises no timeliness issue.

Where the convening authority's action is not taken within 120 days of the end of trial, we apply a presumption of unreasonable delay; however, "[t]he Government can rebut the presumption by showing the delay was not unreasonable." *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Moreover, Article 66(c), UCMJ, 10 U.S.C. § 866(c), empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) (citing *United States v. Collazo*, 53 M.J. 721, 727 (A. Ct. Crim. App. 2000)); *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006).

We review de novo whether due process rights were violated because of post-trial delay. *Moreno*, 63 M.J. at 135. This review entails consideration of the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) Appellant's assertion of the right to timely review and appeal; and (4) prejudice. "[These] four factors are balanced, with no single factor being required to find that post-trial delay constitutes a due process violation." *Moreno,* 63 M.J. at 136 (citing *Barker*, 407 U.S. at 533).

After applying the *Barker* factors, we conclude that the three-day delay, while presumptively unreasonable, was adequately explained in the Post-trial Chronology Memorandum prepared by the Staff Judge Advocate (SJA) for Ninth Air Force. Apparently, Tyndall Air Force Base, where Appellant was tried, did not have a court reporter. The short delay between sentencing and action was primarily the result of this manning issue, which was exacerbated by a hurricane that hindered normal operations in the legal office.

---

be a vague request for counsel. However, after comparing the second excerpt to the verbatim transcript and reviewing the videotaped interview, we found this excerpt to be incomplete and, therefore, misleading. In this excerpt, Appellant may have said "okay" when being advised of his right to counsel, but he was indicating that he understood this right; he was not making a request for counsel. In the future, we caution counsel to be more careful when reading a record of trial and presenting argument to this court.

Nevertheless, the Government demonstrated sufficient diligence in its post-trial processing. Also, Appellant did not assert his right to timely review in his clemency submission, and there was no prejudice. Any post-trial delay in this case was harmless beyond a reasonable doubt.

Although not asserting error, Appellant suggests that he might be entitled to *Tardif* relief for the three-day delay. This court has the authority to disapprove any portion of a sentence that should not be approved and has set out a non-exhaustive list of factors we consider when evaluating the appropriateness of *Tardif* relief. *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). *See also United States v. Bischoff*, 74 M.J. 664, 672 (A.F. Ct. Crim. App. 2015) (citing *United States v. Brown*, 62 M.J. 602, 607 (N.M. Ct. Crim. App. 2005). The factors include the length and reasons for the delay, the length and complexity of the record, the offenses involved, and evidence of bad faith or gross negligence in the post-trial process.

In addition to the findings of our *Barker* analysis, we find the length of the post-trial delay in Appellant's case to be very short, the 632-page record of trial to be moderately long, and no evidence of bad faith or gross negligence in the post-trial processing of this case. These factors favor the Government. Moreover, Appellant's offense was egregious. Based on the totality of circumstances in this case, we conclude that sentence relief under Article 66(c), UCMJ, is unwarranted.

### III. CONCLUSION

The findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED.**

FOR THE COURT

Carol K. Joyce

CAROL K. JOYCE
Clerk of the Court